**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

SEAN EDWARD KRIER,

    Plaintiff,

vs.

JERRY CONNELLY et al.,

    Defendants.

No. 13-CV-13-LRR

**ORDER**

*TABLE OF CONTENTS*

*I.*     *INTRODUCTION.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *1*

*II.*    *PROCEDURAL HISTORY..* . . . . . . . . . . . . . . . . . . . . . . . . . . . . *1*

*III.*   *SUMMARY JUDGMENT STANDARD.* . . . . . . . . . . . . . . . . . . . . . . *2*

*IV.*   *FACTUAL BACKGROUND.* . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*

*V.*     *APPLICATION.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *6*

    *A.*     *42 U.S.C. § 1983 Standard.* . . . . . . . . . . . . . . . . . . . . . . *6*
    *B.*     *Claims Asserted and Parties' Arguments.* . . . . . . . . . . . . . . . . *7*
    *C.*     *Applicable Law.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *8*
    *D.*     *Application..* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *11*

*VI.*   *CONCLUSION.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *12*

*I. INTRODUCTION*

The matter before the court is Defendants Jerry Connelly and Dr. David Richter's (collectively, "Defendants") "Motion for Summary Judgment" ("Motion") (docket no. 36).

*II. PROCEDURAL HISTORY*

On February 26, 2013, Plaintiff Sean Edward Krier filed a pro se Complaint (docket no. 1-1) against John Baldwin, Director of the Iowa Department of Corrections; John Fayram, Warden of the Anamosa State Penitentiary; Jerry Connelly, Health Services

Director of the Anamosa State Penitentiary; Dr. Deol, Medical Director of the Iowa Department of Corrections; Dr. Richter, Doctor for the Anamosa State Penitentiary; and the Iowa Department of Corrections. Krier alleges that defendants violated Krier's rights under the Eighth Amendment to the United States Constitution because they were deliberately indifferent to Krier's serious medical needs. On July 22, 2013, the court completed an initial review of the Complaint and dismissed defendants the Iowa Department of Corrections, John Baldwin, John Fayram and Dr. Deol from this action. July 22, 2013 Order (docket no. 8) at 5. On August 22, 2013, Defendants filed an Answer (docket no. 12). On March 28, 2014, Defendants filed the Motion. On April 7, 2014, Krier filed a Resistance (docket no. 37). On April 16, 2014, Defendants filed a Reply (docket no. 38).

### III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case." *Amini v. City of Minneapolis*, 643 F.3d 1068, 1074 (8th Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 252 (1986)), *cert. denied*, 132 S. Ct. 1144 (2012). "[S]elf-serving allegations and denials are insufficient to create a genuine issue of material fact." *Anuforo v. Comm'r*, 614 F.3d 799, 807 (8th Cir. 2010). "To survive a motion for summary judgment, the nonmoving party must substantiate [its] allegations with sufficient probative evidence [that] would permit a finding in [its] favor based on more than mere speculation, conjecture, or fantasy." *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 801 (8th Cir. 2011) (second alteration in original) (quoting *Putman v. Unity Health Sys.*, 348 F.3d 732, 733-34 (8th Cir. 2003)) (internal quotation marks omitted). The court must view the record in the light most

favorable to the nonmoving party and afford it all reasonable inferences. *See Schmidt v. Des Moines Pub. Sch.*, 655 F.3d 811, 819 (8th Cir. 2011).

## IV. *FACTUAL BACKGROUND*

Krier's claims relate to the treatment of a sports hernia while he was detained at Anamosa State Penitentiary. Krier has been under the care and custody of the Iowa Department of Corrections since April 23, 2009, and was held at the Anamosa State Penitentiary from April 14, 2011, through February 9, 2012, and from March 15, 2012, until the present. Krier sustained the hernia while lifting objects at his labor position in the Anamosa State Penitentiary. Connelly was the nursing supervisor at the Anamosa State Penitentiary at times relevant to the instant action. Connelly retired from this position on March 22, 2013. Dr. Richter was a medical doctor at the Anamosa State Penitentiary at times relevant to the instant action.

On December 14, 2011, Krier first notified medical staff at the Anamosa State Penitentiary that he was experiencing pain in his lower right abdomen. Nurse Gansen saw Krier and scheduled urine tests. Krier again notified medical staff of pain in his lower right abdomen on January 3, 2012, and saw Nurse Shipley, who referred Krier to a doctor. Nurse Shipley also offered Krier a cell in the infirmary, but Krier declined.

On January 4, 2012, Krier saw Dr. Joel Kosinski and complained that he had been experiencing right inguinal pain over the past four to six weeks. Dr. Kosinski noted that Krier had a right "lower abdominal wall hernia (not inguinal herniation) that ha[d] been mildly symptomatic . . . and [was] easily reducible." January 4, 2012 Physician Encounter, Defendants' Appendix ("Defendants' App'x") (docket no. 36-3) at 12. Dr. Kosinski noted that "surgical intervention is not indicated at this time" but that Krier should seek medical attention "[s]hould the hernia become incarcerated (stuck)." *Id*.

On March 27, 2012, Krier first saw Dr. Richter regarding his hernia. Dr. Richter found that Krier had a reducible right inguinal hernia and informed Krier "that surgical

repair of a reducible hernia is elective and that it is against Department of Corrections policy for inmates to have elective surgery." Affidavit of Dr. David Richter, Defendants' App'x at 6. Dr. Richter imposed a restriction on Krier from lifting more than twenty pounds as well as lower bunk and sports restrictions. March 27, 2012 Physician Encounter, Defendants' App'x at 15-16. Pain medication had already been prescribed. Affidavit of Dr. David Richter, Defendants' App'x at 6. On April 10, 2012, Krier presented to health services and stated that the hernia was incarcerated. A nurse instructed Krier to attempt to self-reduce the hernia, however, such attempt failed and Krier was sent to the Emergency Room. The Emergency Room doctor was able to reduce the hernia and Krier was sent back to prison.

Between April 11 and April 13, 2012, Krier was seen several times by nursing staff. On April 11, 2012, Krier was seen by Connolly, who imposed additional restrictions on Krier. On May 17 and May 22, 2012, Krier was again seen by nursing staff who noted that Krier complained of "the hernia pushing down into [his] testicle." May 17, 2012 Nurse Encounter, Defendants' App'x at 46. On June 4, 2012, nursing staff issued Krier hernia briefs and extended the restrictions. Dr. Richter completed reviews of Krier's chart on April 17, June 7, and June 13, 2012, and noted that his hernia was reducible. On June 15, 2012, Krier went to health services seeking to "sign off on all treatment related to his hernia and to have all restrictions relating to the same lifted." Affidavit of Dr. David Richter, Defendants' App'x at 7; *see also* June 15, 2012 Nurse Encounter, Defendants' App'x at 62; Treatment Refusal, Defendants' App'x at 64. Dr. Richter saw Krier again on August 15, 2012, and found that Krier's hernia remained reducible.

On October 29, 2012, Krier was admitted to the Anamosa State Penitentiary infirmary for observation in light of his continued complaints about his hernia. Krier remained in the infirmary for several days and Dr. Richter again examined him on October 31, 2012, and again found that the hernia was reducible. Krier was released from the

infirmary and Dr. Richter followed up with Krier on December 28, 2012, and noted no changes. On January 16, 2013, Krier told nursing staff that he had "gotten used to" the hernia and that "it's not bothering [him] right now." January 16, 2013 Nurse Encounter, Defendants' App'x at 99. On February 12, 2013, Krier saw Connelly and requested that medical personnel lift his restrictions so that he could get a job and stated that the restrictions were no longer needed because "he can do the work and in fact does hundreds of sit ups per day now with no problem." February 12, 2013 Nurse Encounter, Defendants' App'x at 102. Krier then saw Dr. Richter on February 15, 2013, regarding his desire to have the restrictions lifted and stated that his hernia was not causing him any problems. Dr. Richter removed the work class restrictions.

On August 24, 2013, Krier reported to health services that his hernia was not reducible. Department of Corrections Dr. Tonia Baldwin instructed that Krier be sent to the University of Iowa Hospitals and Clinics where a physician reduced Krier's hernia. Krier returned to the Anamosa State Penitentiary and, on August 26, 2013, Dr. Richter reviewed Krier's chart and reimposed restrictions. On August 27, 2013, Dr. Richter saw Krier and noted that the hernia was larger and harder to reduce, but still reducible. However, due to the hernia's increased size and difficulty in reducing, Dr. Richter presented Krier's case to the Iowa Department of Corrections Medical Review Committee for consideration of general surgery. The Iowa Department of Corrections Medical Review Committee referred Krier to the University of Iowa Hospitals and Clinics and a physician recommended surgical repair of Krier's hernia. Krier underwent surgery on September 27, 2013.

Krier, believing that he may have a new hernia, saw Dr. Richter on October 11, 2013, following an altercation at the Anamosa State Penitentiary. October 11, 2013 Physician Encounter, Defendants' App'x at 128. Dr. Richter found no new hernia and advised Krier that some swelling was to be expected post-surgery. Krier saw Dr. Richter

again on October 28, 2013, and Dr. Richter noted that a small hematoma had developed and referred Krier to the University of Iowa Hospitals and Clinics for a post-operation visit. October 28, 2013 Physician Encounter, Defendants' App'x at 129. Krier next saw Dr. Richter on December 3, 2013, and Dr. Richter noted that the hematoma had spontaneously resolved itself.

In his affidavit, Dr. Richter states that "[a]t all times during his incarceration at the Anamosa State Penitentiary, the prison medical staff, including [Dr. Richter], provided Krier with appropriate and timely medical care which met all medical standards of care." Affidavit of Dr. David Richter, Defendants' App'x at 9.

## V. APPLICATION

### A. *42 U.S.C. § 1983 Standard*

Title 42 U.S.C. § 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Congress enacted 42 U.S.C. § 1983 to provide a "broad remedy for violations of federally protected civil rights." *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 685 (1978). However, § 1983 itself does not provide any substantive rights. *Albright v. Oliver*, 510 U.S. 266, 271 (1994); *Graham v. Conner*, 490 U.S. 386, 393-94 (1989); *Chapman v. Hous. Welfare Rights Org.*, 441 U.S. 600, 617 (1979). "[O]ne cannot go into court and claim a 'violation of § 1983'—for § 1983 by itself does not protect anyone against anything." *Chapman*, 441 U.S. at 617. Rather, § 1983 provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." 42 U.S.C. § 1983; *see also Albright*, 510 U.S. at 271

(stating that § 1983 "merely provides 'a method for vindicating federal rights elsewhere conferred'" (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979))); *Graham*, 490 U.S. at 393-94 (same); *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980) (stating that "Constitution and laws" means that § 1983 provides remedies for violations of rights created by federal statute, as well as those created by the Constitution).

To state a claim under 42 U.S.C. § 1983, a plaintiff must establish: (1) "the violation of a right secured by the Constitution and laws of the United States"; and (2) the alleged deprivation of that right "was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

### B. *Claims Asserted and Parties' Arguments*

In the Complaint, Krier asserts that Defendants were deliberately indifferent to his ongoing pain and suffering with respect to the hernia. Specifically, he asserts that Dr. Richter only saw him three times, which amounts to deliberate indifference because he was "unable to evaluate [Krier's] problem directly," which "contributed to the ongoing pain and suffering [Krier] . . . experienced." Complaint at 3. In addition, Krier asserts that Connelly was deliberately indifferent because he told Krier that "nothing will be done [about the hernia] until it strangulates and [Krier is] hospitalized for it." *Id.* Krier asserts that, as of February 26, 2013, the date that he filed the Complaint, his hernia was not completely reducible and the Iowa Department of Corrections' "own policy states that [Krier] require[s] surgery" but Connelly and his staff "refuse to follow proper protocol and procedures." *Id.* The relief that Krier seeks in the Complaint is: (1) that he receive the corrective hernia surgery; (2) monetary compensation for his pain and suffering due to Defendants' deliberate indifference; and (3) a public apology from Defendants.

In the Motion, Defendants argue that the court should grant summary judgment in their favor and dismiss the Complaint because: (1) there is no evidence that Defendants were deliberately indifferent to Krier's serious medical needs; (2) Krier's claims are barred

7

by 42 U.S.C. § 1997e(a)[1]; and (3) Defendants are entitled to qualified immunity.

## C. Applicable Law

The Eighth Amendment to the United States Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const., amend. VIII. Accordingly, the treatment a prisoner receives in prison and the conditions of his confinement are subject to scrutiny under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994); *Helling v. McKinney*, 509 U.S. 25, 31-32 (1993). In its prohibition of cruel and unusual punishment, the Eighth Amendment places a duty on jail and prison officials to provide inmates with necessary medical attention. *Wilson v. Seiter*, 501 U.S. 294, 303 (1991); *Weaver v. Clarke*, 45 F.3d 1253, 1255 (8th Cir. 1995). In this context, a prison official violates the Eighth Amendment by being deliberately indifferent either to a prisoner's existing serious medical needs or to conditions posing a substantial risk of serious future harm. *Weaver*, 45 F.3d at 1255 (comparing *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) (existing medical needs) with *Helling*, 509 U.S. at 33-34 (risk of future harm to health)).

To show an Eighth Amendment violation, two requirements must be satisfied: (1) "the deprivation alleged must be, objectively, 'sufficiently serious,'" and (2) the "prison official must be, as a subjective state of mind, deliberately indifferent to the prisoner's health or safety." *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir. 1995) (quoting *Farmer*, 511 U.S. at 834), *abrogation on other grounds recognized by Langford v. Norris*, 614 F.3d 445 (8th Cir. 2010); *see also Helling*, 509 U.S. at 32; *Estelle*, 429 U.S. at 106; *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000); *Williams v. Delo*, 49 F.3d 442,

---

[1] With respect to Defendants' argument pursuant to 42 U.S.C. § 1997e(a), the court notes that Defendants refer to "Rassmussen," presumably a plaintiff in a different case, rather than Krier, in this portion of their brief. *See* Brief in Support of the Motion (docket no. 36-1) at 7-9. In light of this error and because the court ultimately concludes that Krier failed to state a constitutional claim, the court will not address this argument.

445-47 (8th Cir. 1995). In the context of a prisoner's claim of inadequate medical care, society does not expect that prisoners will have unqualified access to health care. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Consequently, "deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* (citing *Estelle*, 429 U.S. at 103-04); *see also Wilson*, 501 U.S. at 298.

To constitute an objectively serious medical need or a deprivation of that need, the need or the deprivation either must be supported by medical evidence or must be so obvious that a layperson would recognize the need for a doctor's attention. *Aswegan v. Henry*, 49 F.3d 461, 464 (8th Cir. 1995); *Johnson v. Busby*, 953 F.2d 349, 351 (8th Cir. 1991); *see, e.g.*, *Beyerbach*, 49 F.3d at 1326-27 (insufficient evidence of objective seriousness when there is no medical evidence that a delay in treatment produced any harm); *Kayser v. Caspari*, 16 F.3d 280, 281 (8th Cir. 1994) (insufficient evidence of serious medical need when the medical need claimed is based on bare assertion of inmate). The objective portion of an Eighth Amendment claim requires a showing of "'verifying medical evidence' that [a] defendant[] ignored an acute or escalating situation or that delays adversely affected the prognosis given the type of [medical condition] present in [the] case." *Dulany v. Carnahan*, 132 F.3d 1234, 1243 (8th Cir. 1997) (quoting *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997)); *see also O'Neal v. White*, No. 98-2235, 2000 WL 960938, at *1 (8th Cir. July 12, 2000).

To meet the second requirement, the subjective component of an Eighth Amendment claim, a prison or jail official must have a "sufficiently culpable state of mind." *Wilson*, 501 U.S. at 297-303; *Hudson*, 503 U.S. at 8. In a medical needs claim, that state of mind is one of "deliberate indifference" to inmate health. *Farmer*, 511 U.S. at 838-39; *Helling*, 509 U.S. at 32; *Wilson*, 501 U.S. at 302-03; *Estelle*, 429 U.S. at 106. Regarding the meaning of the term "deliberate indifference," the United States Supreme Court has explained:

9

> [A] prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments."

*Farmer*, 511 U.S. at 837. Thus, to establish the second requirement, "deliberate indifference," a plaintiff must assert facts showing the defendant actually knew of and disregarded a substantial risk of serious harm to his or her health or safety. *Id.* at 840-47; *Helling*, 509 U.S. at 32.

Medical treatment that displays "deliberate indifference" violates the Eighth Amendment "whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to the medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104-05 (footnotes omitted); *see also Foulks v. Cole County, Mo.*, 991 F.2d 454, 456-57 (8th Cir. 1993). Negligent acts by prison officials, however, are not actionable under § 1983. *See Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986); *Daniels v. Williams*, 474 U.S. 327, 333-34 (1986); *Estelle*, 429 U.S. at 106. Additionally, an inmate's disagreement or displeasure with his course of medical treatment is not actionable under § 1983. *Dulany*, 132 F.3d at 1240-44; *Bellecourt v. United States*, 994 F.2d 427, 431 (8th Cir. 1993); *Davis v. Hall*, 992 F.2d 151, 153 (8th Cir. 1993) (per curiam); *Warren v. Fanning*, 950 F.2d 1370, 1373 (8th Cir. 1991); *Smith v. Marcantonio*, 910 F.2d 500, 502 (8th Cir. 1990); *Givens v. Jones*, 900 F.2d 1229, 1233 (8th Cir. 1990). "Prisoners do not have a constitutional right to any particular type of treatment." *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996). Furthermore, "[p]rison officials do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse

to implement a prisoner's requested course of treatment." *Id.*

## D. Application

Krier's argument that Defendants' initial failure to afford him surgery to repair his hernia amounts to an Eighth Amendment violation because Defendants displayed a deliberate indifference to his serious medical needs is unavailing. The court finds that the medical staff at the Anamosa State Penitentiary appropriately treated Krier's hernia. Dr. Richter placed appropriate restrictions on Krier in light of his reducible hernia. Moreover, as of January 16, 2013, Krier informed nursing staff that the hernia was no longer bothering him. Then, on February 12, 2013, Krier sought to have his restrictions lifted because he did not think they were necessary and stated that he did hundreds of sit ups per day with no problem. Although he filed the Complaint on February 26, 2013, there is no record of any complaints regarding the hernia again until August 24, 2013, at which point the hernia was still reducible, albeit larger and harder to reduce. However, in light of the changes, Dr. Richter presented Krier's hernia case to the Iowa Department of Corrections Medical Review Board and on September 27, 2013, Krier underwent surgery, one of the remedies Krier sought in the Complaint.

The court has examined the record in its entirety and finds that the medical staff at the Anamosa State Penitentiary acted reasonably in exercising their professional judgment when treating Krier's hernia. Furthermore, as discussed above, Krier's disagreement or displeasure with his course of medical treatment is not actionable under § 1983. *Dulany*, 132 F.3d at 1240-44; *Bellecourt*, 994 F.2d at 431; *Davis*, 992 F.2d at 153; *Warren*, 950 F.2d at 1373; *Smith*, 910 F.2d at 502; *Givens*, 900 F.2d at 1233. Krier has no constitutional right to "to any particular type of treatment." *Long*, 86 F.3d at 765. Furthermore, Defendants did "not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse[d] to implement [Krier's] requested course of treatment." *Id.* Accordingly, the court finds that Defendants' treatment of Krier's hernia

did not violate the Eighth Amendment and this claim is without merit.[2]

## VI. CONCLUSION

In light of the foregoing, Defendants Jerry Connelly and Dr. David Richter's Motion for Summary Judgment (docket no. 36) is **GRANTED**. The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendants and to **CLOSE THIS CASE**.

**IT IS SO ORDERED.**

**DATED** this 30th day of June, 2014.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA

---

[2] In light of the court's conclusion that Krier has failed to show a constitutional violation, the court finds that it is unnecessary to address Defendants' 42 U.S.C. § 1997e(a) and qualified immunity arguments. However, the court notes that a government official sued in his or her individual capacity is "entitled to qualified immunity unless (1) the evidence, viewed in the light most favorable to [Krier], establishes a violation of a constitutional or statutory right, and (2) the right was clearly established at the time of the violation, such that a reasonable officer would have known that his [or her] actions were unlawful." *Bernini v. City of St. Paul*, 665 F.3d 997, 1002 (8th Cir. 2012). In light of the factual record, it follows that Defendants are entitled to qualified immunity and Krier's claims fail for this additional reason.